## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

TERRY MINTER,                      )
                                   )
                Plaintiff,         )
                                   )
v.                                 )        Case No. CIV-02-132-KEW
                                   )
PRIME EQUIPMENT CO.,               )
a Texas corporation,               )
                                   )
                Defendant.         )

### OPINION AND ORDER

This matter comes before the Court on the various motions in limine filed by the parties in this case. All responses and replies have been filed to the motions. Additionally, at the Pretrial Conference of this case, counsel requested the opportunity to brief certain specific issues, some of which are included in the pending motions in limine, some are not. Counsel filed the briefs on an expedited basis and were considered in the formulation of this Order.

**1) Defendant's Motions in Limine**

Defendant Prime Equipment Co. ("Prime") raises some thirteen sub-issues within this single motion. Many of these issues were previously addressed by this Court in advance of the first jury trial of this case. Specifically, Prime seeks to exclude (1) evidence of subsequent remedial measures to the scissor lift adding a metal rod to the lift and a new safety harness; (2) evidence of future damages as too speculative to permit under Oklahoma law; (3) evidence of damages not first provided to Prime; (4) requests for

evidence in the presence of the jury; (5) medical records or bills not submitted to Prime in responses to discovery requests; (6) evidence of other claims and lawsuits against Prime; (7) speculation as to the type of latch and chain on the lift on the day it was sold by Prime to G & G Leasing; (8) speculation as to the type of latch and chain on the lift on the day of the accident; (9) photographs showing the lift's entry, chains, and latches subsequent to July of 1996; (10) evidence of inspections of the lift in the years subsequent to the accident; (11) evidence of chain and latch repairs introduced to create the inference that the chains and latches were defective when the lift was sold by Prime to G & G Leasing; (12) evidence regarding the failure to properly maintain or repair the lift; and (13) evidence of other accidents involving scissor lifts.

**a) Subsequent Remedial Measures** – As this Court has previously ruled, the addition of a metal rod to the lift represents a subsequent remedial measure which will be excluded at trial. Fed. R. Evid. 407. The Tenth Circuit Court of Appeals in its decision of June 29, 2006 affirmed this Court's determination that such evidence represents a subsequent remedial measure, not subject to any of the stated express exceptions for admission. <u>Minter v. Prime Equipment Co.</u>, 451 F.3d 1196, 1211-1212 (10th Cir. 2006). Plaintiff's argument that the affirmation was made in the context of a failure to warn case rather than the current products

2

liability claim to be asserted in this trial does not alter the character of the evidence. Moreover, the application of Rule 407 supersedes any application of the Oklahoma state law equivalent of Okla. Stat. tit. 12 § 2407, since "where a conflict exists between the Federal Rules of Evidence and state law, [the Tenth Circuit] appl[ies] the Federal Rules unless the state law reflects substantive concerns or policies." <u>Sims v. Great American Life Ins. Co.</u>, 469 F.3d 870, 880 (10th Cir. 2006).

Additionally, Prime seeks to exclude a change in policy by Plaintiff's employer requiring the use of a different type of safety belt than was in place at the time of the accident. While this Court originally ruled this change in policy did not represent a subsequent remedial measure, it appears the Advisory Committee Note for Rule 407 as well as case authority from other jurisdictions supports the exclusion of this type of evidence, as representing a subsequent remedial measure. *See*, <u>In re Air Crash Disaster</u>, 86 F.3d, 498, 532 (6th Cir. 1996). Therefore, this evidence will be excluded from evidence at trial.

**b) Future Damages** – As this Court previously ruled, evidence of future damages will be permitted at trial, as the testimony of Richard Sullivan, Plaintiff's expert, is sufficiently certain at this time to permit its admission. Prime obliquely suggests that Mr. Sullivan is not qualified to render some of the opinions he provided in his deposition. However, Prime does not specifically

request a <u>Daubert</u> hearing for this Court to exercise its gatekeeper function in this regard. Without such a request, this Court finds the credibility and weight of Mr. Sullivan's opinions are best determined by the jury.

**c) Evidence Not Provided to Prime** – Evidence not provided to Prime within the time frame provided in the Scheduling Order established in this case will not be introduced or admitted.

**d) Requests for Evidence Before the Jury** – Counsel shall not request evidence in the presence of the jury at trial.

**e) Medical Records or Bills Not Submitted to Prime** –

Plaintiff concedes this portion of the Motion and, therefore, shall not introduce at trial any medical records or bills which have not been produced to Defendants prior to trial unless first requesting permission of the Court.

**f) Evidence of Other Claims and Lawsuits Against Prime** –

Prime also seeks to exclude evidence of "other claims and lawsuits against Prime," as being irrelevant and more prejudicial than probative in accordance with Fed. R. Evid. 402 and 403. Prime does not identify any specific claims or lawsuits it seeks to preclude from the evidence at trial and, as such is the case, this Court is unable to determine the relevancy or probative value of any other "claim or lawsuit" at this time. Thus, this Court reserves ruling on this issue until trial. However, Plaintiff should seek counsel with the Court on the propriety of any proposed

evidence of this nature out of the presence of the jury prior to its introduction.

**g) Speculation as to the Type of Latch and Chain on the Lift on the Date of Sale and Date of Accident/Spoliation** – Prime next seeks to exclude evidence which it states would represent speculation as to the latch and chain in place on the lift when it was sold by Prime to G & G Leasing and on the day of the accident. Prime represents that no evidence exists which would definitively state what was in place at these two distinct times. This issue calls into play one of Plaintiff's arguments raised for the first time in the post-Pretrial Conference briefs – spoliation.

In this case, the lift was manufactured by Economy in 1987 and sold to Prime's predecessor, Grace Equipment Company. The lift was rented to various parties from 1987 to 1991. In August of 1991, the lift was sold to G & G Leasing after it had been leased by that entity for approximately one year. After the sale, Prime contractually retained the obligation to maintain, repair and service the lift, despite being sold to G & G Leasing. The accident involving Plaintiff occurred in July of 1996. A lawsuit was commenced in state court on April 2, 1997. Thereafter, the lift was modified, certainly by February 24, 1998.

Additionally, the record indicates Prime kept meticulous records of its modifications, repairs and services performed on the lift, including the closure system. Testimony from a Prime

5

official, Ben Fort III, reveals the records were typically kept in perpetuity.[1] However, the record also indicates for some period prior to the sale of the lift, inspection, maintenance and repair records have not been produced by Prime. It was ostensibly during this time that the entry closure system was modified to include the chain and latch arrangement which was present on the date of the accident. Additionally, the lift was modified, allegedly by Prime, post filing of the state court lawsuit. Prior to that time, scant pictures were taken of the lift which would indicate its condition at the time of either the sale to G & G Leasing or at the time of the accident. Thus, crucial evidence of the state of the chain and latch is no longer available for inspection. These circumstances, then, give rise to Plaintiff's claim of spoliation of the lift and repair records by Prime and leads to the level of speculation as to the state of the chain and latch put forth by Plaintiff's expert witnesses to which Prime objects.

Spoliation of crucial evidence incontrovertibly occurred in this case during the time Prime was directly responsible for the inspection, repair and maintenance of the lift. However, spoliation occurs with varying degrees of culpability. Clearly, the most severe situation occurs where a party directly destroys or alters evidence with the bad faith intent to deprive the opposing

---

[1] This Court will address Prime's challenge to Mr. Fort's testimony later in this Order.

6

party of the relevant evidence. Typically, this type of spoilation leads to an adverse inference instruction to the jury at trial which instructs that the jury to infer that the destroyed evidence would have been unfavorable to the party responsible for its destruction. Aramburu v. The Boeing Co., 112 F.3d 1398, 1407 (10th Cir. 1997)(citations omitted). Critical to granting this relief is a finding of bad faith. Id. Mere negligence in the loss of the evidence is insufficient as "it does not support an inference of consciousness of a weak case." Id.

The record is entirely devoid of any indication Prime acted in bad faith in either the omission of the repair and inspection records or the modification of the lift. Therefore, an adverse inference instruction would be inappropriate. However, Plaintiff's dilemma in presenting the evidence of the state of the chain and latch remains. Spoilation has occurred and lesser sanctions for those acts are available. Generally, courts weigh two factors to consider sanctions for spoilation – (1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party. Jordan F. Miller Corp. v. Mid-Continent Aircraft Service, Inc., 139 F.3d 912, 1998 WL 68879, 4 (10th Cir.(Okla.))(unpublished case) citing Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994); Dillon v. Nissan Motor Co., 986 F.2d 263, 267-68 (8th Cir. 1993). Prime's protestations to the contrary notwithstanding, Plaintiff bears

little or no culpability for the omission of the evidence. Prime contends Plaintiff conducted poor discovery in the state court case and, in fact, did not develop the theory upon which he now relies concerning the defective condition of the chain and latch closure until considerably late in the litigation process. Be that as it may, "[a] litigant has a duty to preserve evidence that he knows or should know is relevant to imminent or ongoing litigation." Miller, at 5 citing Dillon, 986 F.2d at 267. Prime did not do so. At the very least, Prime should have maintained sufficient documentation of any alterations or modifications of the lift, post-accident, once the state court case was filed.

On the second element, Plaintiff has been significantly prejudiced by the omission of evidence, as demonstrated by Prime's challenge to his ability to prove the condition of the lift, generally, and the closure system, specifically, at the time of the sale and accident. Plaintiff's ability to prove his case should not be impaired by actions outside of his control. Prime should not be permitted to suggest to the jury that Plaintiff cannot prove the condition of the chain and latch on the date of sale and date of accident, given the modifications made to the machine post-accident and lack of maintenance records pre-sale. As a result, Plaintiff's expert witness will be permitted to engage in some level of speculation as to the nature of the latch and chain at the relevant times. The line between speculation and opinion is indeed

fine.  Certainly, Plaintiff bears the burden of proof as to the party responsible for the alteration of the lift and the time when it occurred.  However, experts are entitled to lay the foundation for their opinions and opposing counsel is entitled to reveal to the jury through cross-examination the strength of that foundation. Until the testimony is ferreted out at trial, this Court cannot rule in the abstract as to whether the expert's speculation represents a proper inference permitted under Fed. R. Evid. 703.

**h) Photographs of the Lift's Entry, Chains and Latches Subsequent to July of 1996** – Prime also seeks to exclude photographs of the lift's entry, chains and latches subsequent to the July, 1996 accident.  Photographs of the lift as it existed at the time of the accident were taken.  Plaintiff contends the photographs are inadequate to show the latches and only show the entry chains from a distance.  As with any case where photographs are represented to portray the condition of a thing, in order to be relevant and admissible, Plaintiff will bear the burden of demonstrating the photographs taken subsequent to the accident represent the condition of the lift at the time of the accident which represents the condition of the lift at the time it left Prime's possession and control.

This Court has examined the photographs which Plaintiff purports to introduce at trial.  In the post-Pretrial Conference briefing, Prime sets out its objections to these photographs.

Specifically, Prime withdraws its objection to Plaintiff's exhibit nos. 13, 19, 30, 41, 42, 391, 392, and 393. Therefore, these photographs will be permitted.

With regard to Plaintiff's exhibit (old) nos. 12, 14, 15, 17, 18, 20, 22, 27, 31, 34, 35, 36, 37, 38, 39, bottom photo in 43, 44, 49, 50, 60, 61, 62, 66, 67, 372, 381, 382, 389, and 390[2], Prime contends the photos were taken two years following the subject accident and 7-8 years after the sale of the lift to G & G Leasing and are therefore not relevant. Prime also asserts the photos show a solid bar added subsequent to the filing of the lawsuit, which constitutes a subsequent remedial measure and reflects "wear and tear" to the lift.

Many of these circumstances can be brought out to the jury in cross-examination. This Court is not concerned with "wear and tear" on the lift, nor the fact the photograph was taken substantially after the accident, given this Court's ruling on spoliation. However, photographs that clearly depict subsequent remedial measures cannot be permitted, as they would only serve to confuse and mislead the jury. In particular, photographs that show the subsequently installed solid top bar cannot be introduced at trial. To that end, Plaintiff's exhibit (new) nos. 10, 11, 13, 15,

---

[2] After the Pretrial Conference, Plaintiff's counsel renumbered his trial exhibits as requested by the Court after the removal of some exhibits to coincide with this Court's evidentiary rulings. Plaintiff's counsel provided a list of the exhibits which includes the old exhibit numbers and corresponding new exhibit numbers. This Court's rulings in this Order will reference the new numbering employed by Plaintiff.

bottom photo of 51, top photo of 54, 55, 56, 57, top photo 58, 59, bottom photo of 63, 64, 21, 22, 23, 24, 25, 29, 30, 33, 39, 40, 46, 47 shall be excluded from trial.[3]

Prime also seeks to exclude Plaintiff's exhibit (old) nos. 16, 23, 24, 25, 26, top photo of 31, bottom photo of 38, 40, 45, 46, 48, 68, 69, 70, 371, 374, 375, 376, 377, 378, 383, 384, and 385, contending they were taken a considerable time after the date of sale and reflect repairs and changes to the lift, including "wear and tear." After review, this Court finds Plaintiff's exhibit (new) nos. 42 and 43 should be eliminated because they depict subsequent remedial measures. The remaining photos will be permitted.

Prime requests the exclusion of Plaintiff's (old) exhibit nos. 16, 20, 22, bottom photo in 33, 34, 40, top photo in 43, 50, 373, 386, and 387 because they depict a latch added to the chain on the entry to the lift platform solely for the inspection by the litigants and experts. These photographs will be permitted for the purpose of Plaintiff attempting to show the condition of the lift. Any qualifications to the addition of the latch can be ferreted out on cross-examination. Therefore, Plaintiff's exhibit (new) nos. 13, 15, bottom photo of 53, 54, 60, top photo of 63, 22, 34, and 44 will be admitted.

_____

[3] It appears Plaintiff's exhibit (old) nos. 12, 14, 15, and 27 have already been removed from the exhibits.

Plaintiff's exhibit (old) nos. 21, 29 and 47 are objected to by Prime as showing inspection information. These exhibits will be allowed for the purpose of attempting to match the inspection information available with the photo. Therefore, Plaintiff's exhibit (new) nos. 14 and 67 will be permitted.

Plaintiff's exhibit (old) nos. 32, 33, 379, 380 and 388 are sought to be excluded by Prime because of the date they were taken in relation to the sale and accident and questions of accuracy of depiction of the chain and latch system. These will be permitted in light of the Court's prior rulings. Therefore, Plaintiff's exhibit (new) nos. 52, 53, 37, 38, and 45 may be introduced.

Prime objects to Plaintiff's exhibit (old) nos. 63, 64, 65, 375, 376, 377, and 383 as they depict portions of the lift not associated with the entry. The information may be relevant to portray a complete picture of the lift and will be permitted. As a result, Plaintiff's (new) exhibit nos. 26, 27, 28, and 41 will be allowed at trial.

The remaining exhibit to which Prime objects, Plaintiff's exhibit (old) no. 370 has been removed.

**i) Evidence of Inspections of the Lift in Years Subsequent to the Accident** – Prime seeks the exclusion of evidence of inspections of the lift in the years after the accident. Given this Court's ruling on spoliation, any post-accident inspection reports would only be relevant if it would provide any indication as to the state

of the entry chain and latch on the date of the accident. Plaintiff's argument that the information is relevant to the question of whether "substandard" materials were used in the chain and/or latch at the time of the accident is of no moment. No evidence from either side indicates the chain or the latch broke or failed from a materials standpoint. Therefore, should this be the purpose of the evidence, it will be excluded.

**j) Evidence of Chain and Latch Repairs** – Prime contends the introduction of evidence of chain and latch repairs should be excluded as irrelevant to the actual condition of the lift at the time it was sold by Prime to G & G Leasing. Plaintiff's expert witness has testified that he relied upon these repair invoices in order to reach his conclusions. Again, given this Court's ruling on the spoliation of evidence, Plaintiff and his expert witness will be given some latitude on using repair records to establish the state of the chain and latch at the time the lift left the possession and control of Prime and at the time of the accident.

**k) Evidence Regarding the Failure to Maintain or Repair the Lift** – Prime states evidence of the failure to maintain or repair the lift should be excluded since such evidence would only be relevant to a negligent maintenance or repair claim. No such claim remains in this action. Specifically, Prime seeks to exclude "safety bulletins" concerning the lift. Plaintiff contends the safety bulletins will only be introduced should Prime be permitted

13

to argue to the jury that Plaintiff was responsible for his injuries as a result of the failure to use the safety harness. As will be reflected in this Order, the introduction of the safety harness into evidence will not be permitted, absent the required showing by Prime.

**1) Evidence of Other Accidents Involving Scissor Lifts** – Prime seeks to exclude evidence of other accidents involving scissor lifts. Just as in the instance of the exclusion of other lawsuits involving scissor lifts, Prime does not identify any specific other accidents it seeks to exclude nor does Plaintiff identify other similar accidents it intends to introduce at trial. Consequently, a ruling on this issue will be reserved until trial. Plaintiff is forewarned, however, that a showing of substantial similarity will be required prior to the introduction or admission of any "other accidents" at trial. *See*, <u>Wheeler v. John Deere Co.</u>, 862 F.2d 1404, 1408 (10th Cir. 1988).

**2) Plaintiff's Renewed Motions in Limine**

Plaintiff seeks to exclude evidence of (1) his marijuana use; (2) contacts with law enforcement; and (3) evidence as to his prior accidents. Prime concedes the Motion, therefore, it will be granted.

**3) Plaintiff's Motion in Limine to Exclude Purported Agreement and Related Testimony**

Plaintiff seeks to exclude evidence regarding a contract involving non-parties to this action. Prime concedes the Motion,

therefore, evidence of the contract will be excluded.

## 4)  Plaintiff's Motion in Limine to Exclude Evidence of Negligent Conduct of Plaintiff in the Workplace

Plaintiff seeks to exclude evidence of his failure to use either a safety belt or hard hat.  Prime concedes the evidence of Plaintiff's failure to wear a hard hat is not relevant to the products liability claim to be tried.

Evidence of the failure to use a safety belt was permitted in the first trial of Plaintiff's failure to warn claim.  The admission of the evidence was affirmed by the Tenth Circuit Court of Appeals because it "was relevant to the specific causation issues raised by Mr. Minter's failure to warn claim." Minter, 451 F.3d at 1214.  Prime contends the evidence is relevant to proving its defense of voluntary assumption of the risk by Plaintiff and to challenge Plaintiff's credibility.

In order to establish the defense of voluntary assumption of the risk in a products liability case, Defendant must demonstrate (1) a defect in the lift entry closure system existed, which created a risk of injury; (2) Plaintiff knew of the risk and appreciated the degree of danger; (3) Plaintiff had the opportunity to avoid the risk; and (4) Plaintiff's use of the entry system was voluntary and unreasonable and was the direct cause of his injury. Oklahoma Uniform Jury Instructions (Civil) 12.10, relying on Kirkland v. General Motors Corp., 521 P.2d 1353, 1366 (Okla. 1974). First, it is clear a defect need not be admitted to assert this

defense, as alternative pleading is permitted. <u>Holt v. Deere &</u>
<u>Company</u>, 24 F.3d 1289, 1296 n.5 (10th Cir. 1994). Plaintiff
testified he was aware of the closure's operation, the need to
employ it, and the dangers associated with the use of the lift.
Evidence exists in the record to support the contention Plaintiff
voluntarily assumed the risk associated with the use of the chain
and latch. However, the same cannot be said for the safety
harness. Plaintiff's testimony is he did not see the harness and
would have used it had he seen it. The voluntariness of the risk
assumption is, therefore, called into question. Absent a showing
by Prime that Plaintiff voluntarily assumed the risk of not using
the safety harness by knowing of its existence and voluntarily
deciding not to use it, the evidence will not be permitted.[4]

## 5) Plaintiff's Motion in Limine to Exclude Evidence of Improper Affirmative Defenses

Plaintiff challenges the propriety and applicability of some
of the affirmative defenses asserted by Prime in this action.
Prime's affirmative defenses and, consequently Plaintiff's Motion,
are subject to the issues reserved in the Pretrial Order submitted
by the parties. The jury will not be instructed on any defenses
asserted by Prime which are not supported by law and the facts
presented at trial. The propriety of these defenses will be

---

[4] Prime's alternative bases for admission are also not persuasive.
Use of the safety harness evidence for impeachment is outweighed by the
prejudice of its introduction. Use of the evidence for mitigation of
damages purposes is speculative, at best.

determined at that time. The exception is the voluntary assumption of the risk defense which will be permitted in accordance with this Court's ruling herein above.

**6) Plaintiff's Motion in Limine to Exclude Evidence of Use or Non-Use of Entry Chain**

Plaintiff seeks to exclude evidence of either his latching or non-latching of the entry chain on the lift. Plaintiff contends such evidence is only relevant to an action based in negligence and not strict products liability. Such evidence is relevant to the element of causation which Plaintiff must prove in order to prevail in this action and for the defense of voluntary assumption of the risk. It is not, as asserted by Plaintiff, introduced as evidence of Plaintiff's negligence, since contributory negligence is not a proper defense to a strict products liability action. Rather, the evidence is introduced to determine whether the alleged defect was the cause of Plaintiff's injuries and whether he voluntarily assumed the risk of not latching the chain. Therefore, the evidence will be permitted.

**7) Plaintiff's Motion for Exclusion of Evidence of Collateral Sources** – Plaintiff seeks to exclude evidence or references on some of the exhibits to collateral sources of recovery. Prime concedes this Motion, therefore, it will be granted.

**8) Briefed Issues**

The parties have also briefed several issues for which no specific Motion is pending.

**a) Prime's Status as a Manufacturer of the Lift** - Plaintiff seeks to have the issue of whether Prime qualifies, through its actions, as a manufacturer of the subject lift. Plaintiff contends Prime made sufficiently significant alterations and modifications to the lift such that it became the manufacturer of it. Given the far reaching liability of <u>Kirkland</u> to include resellers of products, the only significance of this issue is whether ANSI regulations would apply to Prime's activities as a manufacturer.

It is admitted by all parties that no case from an Oklahoma court has found a seller or reseller to be transformed to a manufacturer. Instead, Plaintiff relies upon cases from California and Indiana to make his case. <u>Kirkland</u> extended strict products liability to "manufacturers," which include "processors, assemblers, and all other persons who are similarly situated in processing and distribution." <u>Kirkland</u>, 521 P.2d at 1361. No provision is made to alter the status of a seller to a manufacturer. Absent such specific case authority from the State of Oklahoma, this Court will not do so either.

**b) OSHA Regulation Violations as a Basis for Punitive Damages**

Plaintiff seeks to introduce various OSHA regulations, which purportedly give ANSI standards the force of law, for the purpose of showing Prime's alleged failure to follow the minimum regulations gives rise to a finding of reckless disregard to lack of due care for punitive damages. Compliance with industry

standards is generally considered to be irrelevant in a strict products liability case but rather relates to the duty of care under a negligence theory. <u>Rexrode v. American Laundry Press Co.</u>, 674 F.2d 826, 831 (10th Cir. 1982). No negligence claim remains in this case. Moreover, since Prime is not a manufacturer, it cannot be held to the ANSI standards. Similarly, OSHA regulations impose mandatory standards on employers and employees - statuses not held by Prime. <u>Id</u>. at 831 n.15. Therefore, the introduction of OSHA regulations for the purpose of establishing punitive damage liability will not be permitted.

**c) Testimony of Ben Franklin Fort, III as a 30(b)(6) Witness**
─  While this case was pending in state court, a letter was sent by Plaintiff's counsel (who is not the same counsel representing Plaintiff in this federal action) sent a letter to defense counsel seeking to depose "a representative of Defendant to testify as to the history of maintenance, ownership and use of the subject scissor lift." Mr. Fort was produced by Prime. Among his testimony, Fort stated Prime kept records "forever" concerning inspections and maintenance. This testimony is offered by Plaintiff to show the records relevant to the time period around the sale of the lift are missing when they should be present since Prime keeps them in perpetuity.

Prime contends the attorney for Plaintiff failed to ask the right questions of Mr. Fort to establish the time within which

records were kept – at the time of the sale or at the time of the deposition. Prime's attorney was present to cross-examine witness but apparently failed to rehabilitate or clarify his testimony. Prime has not cited any authority which requires "magical designation language" in order to obtain the testimony of a Rule 30(b)(6) witness. This Court finds the request for a corporate "representative" on a specific subject was sufficient. Therefore, Plaintiff may use Mr. Fort's testimony as a designated 30(b)(6) witness, restricted to the subjects for which he was noticed. To the extent possible, Prime may clarify its record-keeping practices at trial.

**d) Prime's Requested Exhibits** – Through this document, Prime has withdrawn its exhibit nos. 8, 9, 10 and 18. It also seeks to introduce its exhibit nos. 11, 12, 13, 15, 16, and 17, which depict various warnings on the lift. These exhibits are relevant to the issue of voluntary assumption of the risk and will be permitted.

IT IS THEREFORE ORDERED that Defendant's Motions in Limine filed August 20, 2007 (Docket Entry #156) is hereby **GRANTED,** in part, in that (1) evidence of subsequent remedial measures to the scissor lift adding a metal rod to the lift and a new safety harness; (2) evidence of damages not provided to Prime; (3) requests for evidence in the presence of the jury; (4) medical records or bills not submitted to Prime in responses to discovery requests. The remainder of the Motion is hereby **DENIED,** subject to

re-urging, if necessary, at trial.

IT IS FURTHER ORDERED that Plaintiff's Renewed Motion in Limine filed August 20, 2007 (Docket Entry #159) is hereby **GRANTED**. Accordingly, evidence of Plaintiff's (1) marijuana use; (2) contacts with law enforcement; and (3) prior accidents will not be introduced at trial.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Exclude Purported Agreement and Related Testimony filed August 20, 2007 (Docket Entry #160) is hereby **GRANTED**. Evidence of the referenced agreement will not be introduced at trial.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Exclude Evidence of Negligent Conduct of Plaintiff in the Workplace filed August 20, 2007 (Docket Entry #158) is hereby **GRANTED**, in that evidence of Plaintiff's use or non-use of a hard hat will not be introduced at trial. Additionally, evidence of the use or non-use of the safety harness will be excluded absent the required showing prior to admission as reflected in this Order.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Exclude Evidence of Improper Affirmative Defenses filed August 20, 2007 (Docket Entry #161) is hereby **DENIED**, subject to re-urging at trial.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Exclude Evidence of Use or Non-Use of Entry Chain filed August 20, 2007 (Docket Entry #157) is hereby **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Exclusion of Evidence of Collateral Sources filed September 11, 2007 (Docket Entry #191) is hereby **GRANTED**.

The parties shall abide by the other evidentiary and legal rulings briefed by counsel as reflected in this Order. No witness, party or attorney shall refer to the evidence excluded by this Order without seeking and obtaining prior leave of Court at trial.

IT IS SO ORDERED this _14th_ day of September, 2007.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE